**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| CATARINA ALMEIDA PORFIRIO, | : | |
| | : | |
| Plaintiff, | : | Civil Action No.:  25-4055 (RC) |
| | : | |
| v. | : | Re Document No.:  5 |
| | : | |
| MARKWAYNE MULLIN, Secretary of | : | |
| Homeland Security, *et al.*, | : | |
| | : | |
| Defendants. | : | |

### <u>MEMORANDUM OPINION</u>

GRANTING DEFENDANTS' MOTION TO TRANSFER AND DENYING WITHOUT PREJUDICE
DEFENDANTS' MOTION TO DISMISS

## I.  INTRODUCTION

Plaintiff Catarina Almeida Porfirio, a citizen of Brazil who resides in Utah, challenges

the denial of her visa.  She had filed an I-140 petition seeking classification as an alien of

extraordinary ability in the field of athletics for an employment-based, first preference

immigration visa, known as an EB-1A visa.  The government denied the petition from a field

office in Texas.  Notwithstanding her place of residence or the location of the center that denied

her petition, Ms. Porfirio brings this action challenging that denial in the District of Columbia

against Defendants Markwayne Mullin, in his official capacity as U.S. Secretary of Homeland

Security, and Joseph B. Edlow, in his official capacity as Director of the U.S. Citizenship and

Immigration Services ("USCIS").[1]

---

[1] The current Secretary of Homeland Security, Markwayne Mullin, is substituted for his
predecessor, Kristi Noem, pursuant to Federal Rule of Civil Procedure 25(d).

The government moves to transfer this action to the Northern District of Texas or, in the alternative, to the District of Utah, under 28 U.S.C. § 1404(a) and to dismiss the case under Fed. R. Civ. P. 12(b)(3) and 12(b)(6).  For the reasons explained below, the Court will grant the government's motion to transfer the case to the Northern District of Texas and deny the government's motion to dismiss without prejudice.

## II.  FACTUAL BACKGROUND

Ms. Porfirio is a Brazilian citizen and endurance athlete specializing in ultra-distance open-water swimming, Compl. for Declaratory Relief & Review of Agency Action Under the Administrative Procedure Act ("Compl.") ¶ 1, ECF No. 1.  Per the Complaint, she currently resides in Highland, Utah.  *See id.* at 1.  On the basis of her achievements as an athlete, Ms. Porfirio filed a Form I-140 petition on May 27, 2025.  *Id.* ¶¶ 1, 11.  As part of her filing, Ms. Porfirio submitted evidence of her "prizes or awards, membership in associations, published materials about [her], participation as a judge, authorship of scholarly articles, and evidence of leadership roles," to demonstrate the requisite "extraordinary ability evidenced by sustained national or international acclaim."  *Id.* ¶¶ 12, 14.

On June 12, 2025, USCIS's Texas Service Center issued a Request for Evidence ("RFE"), Defs.' Mot. to Transfer & Dismiss and Mem. in Supp. Thereof ("Defs.' Mot."), Ex. 5-1 at 1–2, ECF No. 5, centered on "(1) potential fraud/misrepresentation; (2) clarification of evidence/compliance; (3) evidence of intent to continue work; and (4) final merits determination on sustained acclaim," Compl. ¶ 19.  In response, Ms. Porfirio provided USCIS with additional evidence "clarifying that no misrepresentation occurred and that any confusion was due to USCIS's interpretation of general versus category-specific race results."  *Id.* ¶ 20.  Nonetheless, on September 22, 2025, USCIS's Texas Service Center denied Ms. Porfirio's petition, finding

that the record did not show that she had either received a major internationally recognized prize or, in its absence, fulfilled at least three of the ten criteria through which an individual can establish the sustained acclaim necessary to qualify as an individual of extraordinary ability under 8 C.F.R. § 204.5(h)(3).  Defs.' Mot., Ex. 5-1 at 1, 3–14.

Ms. Porfirio filed this lawsuit on November 19, 2025, against the Secretary of Homeland Security and the Director of USCIS.  Compl. at 1; *id.* ¶¶ 1–3.  Ms. Porfirio alleges that USCIS's denial of her I-140 Petition was arbitrary and capricious in violation of the Administrative Procedure Act, 5 U.S.C. §§ 701–06, and the Fifth Amendment's Due Process Clause, U.S. Const. amend. V.  *Id.* ¶¶ 35–70.  Her Complaint requests that the Court reverse USCIS's decision, declare it unlawful and an arbitrary abuse of discretion under Section 706, award Ms. Porfirio reasonable attorney's fees and costs incurred by bringing this action, and any other relief the Court "deems just and proper."  *Id.* at 15–16 (request for relief).

On February 2, 2026, the government moved under 28 U.S.C. § 1404(a) to transfer Ms. Porfirio's lawsuit to the Northern District of Texas or, in the alternative, to the District of Utah, and to dismiss the case under Fed. R. Civ. P. 12(b)(3) and 12(b)(6).  Defs.' Mot. at 6.

### III.  LEGAL STANDARD

The federal change-of-venue statute provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404 (a).  This allows a court to transfer a case even if a plaintiff has brought a case in a district with proper venue.  *Ngonga v. Sessions*, 318 F. Supp. 3d 270, 274 (D.D.C. 2018) (citing 28 U.S.C. § 1404(a)).  In making the decision to transfer, the Court must make an "individualized, case-by-case consideration of

3

convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).

The moving party has the burden to establish that transfer is proper. *Chauhan v. Napolitano*, 746 F. Supp. 2d 99, 102 (D.D.C. 2010). To establish that the transfer of venue is proper, the government must demonstrate that the instant case "might have been brought" in the proposed transferee districts by showing that venue would have been proper there per Section 1391.[2] *Melnattur v. U.S. Citizenship & Immigr. Servs.*, No. CV 20-3013 (JDB), 2021 WL 3722732, at *2 (D.D.C. Aug. 23, 2021) (citing *Wei Lai Dev. LLC vs. U.S. Citizenship & Immigr. Servs.*, No. CV 21-887 (RDM), 2021 WL 2073403, at *3 (D.D.C. May 24, 2021). Once this threshold is satisfied, the government must show that, on balance, private and public interests weigh in favor of transfer. *Chauhan*, 746 F. Supp. 2d at 102. In deciding a motion to transfer, a court may consider materials outside the pleadings. *Id.* Whether a transfer or a dismissal is in

---

[2] Transfer under Section 1404(a) is only appropriate if venue is also proper in the district where the suit is originally filed; if it is not, the appropriate mechanism for transfer is Section 1406(a). *See Atl. Marine Const. Co., Inc. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 55–57, 59–60 (2013). The residence of employees of the United States sued in their official capacity "is determined on the basis of the official residence of the federal officer or agency." *Bourdon v. DHS*, 235 F. Supp. 3d 298, 304 (D.D.C. 2017) (quoting *Franz v. United States*, 591 F. Supp. 372, 377 (D.D.C. 1984)). Although USCIS used to be headquartered in Washington, D.C., as of December 2020, the agency moved its headquarters to Camp Springs, Maryland. *See Wei Lai*, 2021 WL 2073403, at *3 n.5. In its motion to dismiss, the government challenged the propriety of venue in this district. *See* Defs.' Mot. at 12–14. Because the Court will transfer the case, however, it does not need to address the government's motion to dismiss. After all, even if venue were improper in the District of Columbia, the result would not change because Section 1406(a) also permits a court to transfer a case "to any district or division in which it could have been brought" "if it be in the interest of justice," 28 U.S.C. § 1406(a), and the framework for assessing a transfer under Section 1406(a) is essentially identical to that under Section 1404(a). *See Bahena v. Renaud*, No. CV 21-291 (RDM), 2021 WL 1820232, at *2 (D.D.C. May 6, 2021); *Claros v. Cowan*, No. CV 21-609 (JEB), 2021 WL 1820209, at *1 (D.D.C. May 6, 2021) ("[A]lthough Plaintiffs and Defendants disagree about whether venue is proper in this District, the Court need not wade into that controversy today. Instead, it will proceed with the § 1404(a) transfer framework . . . .").

the interest of justice, "rests within the sound discretion of the district court." *Naartex Consulting Corp. v. Watt* 722 F.2d 779, 789 (D.C. Cir. 1983).

## IV.  ANALYSIS

The government asks this Court to transfer the instant action to the Northern District of Texas, where the USCIS Service Center that processed Ms. Porfirio's petition is located, or alternatively to the District of Utah, where Ms. Porfirio resides.  Defs.' Mot. at 6.  The Court agrees with the government that the instant case should be transferred to the Northern District of Texas.  The Court first concludes that the proposed transferee districts are appropriate venues and then finds that both the private and public factors are served by transfer to the Northern District of Texas.

### A.  Venue in Transferee Courts

First, the Court concludes that the proposed transferee districts—the Northern District of Texas and the District of Utah—are ones where the action "might have been brought."  28 U.S.C. § 1404(a).  For suits, like this one, against "an officer or employee of the United States . . . or an agency of the United States," venue is proper "in any judicial district in which (A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (C) the plaintiff resides if no real property is involved in the action."  28 U.S.C. § 1391(e)(1).

The District of Utah fits within the third prong, and the Northern District of Texas satisfies the second.  Starting with Utah, Plaintiff resides in Highland, Utah, located in the District of Utah.  *See* Compl. at 1; Defs.' Mot. at 6.  Venue would thus be proper in that district under Section 1391(e)(1)(C).  As for the Northern District of Texas, Ms. Porfirio's petition was adjudicated by the USCIS Texas Service Center located in Irving, Texas.  Defs.' Mot. at 6,

Ex. 5-1 at 1.  Accordingly, "a substantial part of the events or omissions giving rise" to this claim occurred in the Northern District of Texas.  28 U.S.C. § 1391(e)(1)(B); *see also Pengbo Li v. Miller*, No. CV 20-1122 (EGS), 2021 WL 1124541, at *3 (D.D.C. Mar. 24, 2021) (determining that the District of Nebraska was "an appropriate venue because it is the location where NSC [USCIS's Nebraska Service Center] processed and denied Plaintiffs' request.").  Venue is thereby also proper in the Northern District of Texas under Section 1391(e)(1)(B).

### B.  The Balance of Public and Private Interests

With the threshold requirement satisfied, the Court's analysis turns to the Government's showing that "considerations of convenience and the interests of justice weigh in favor of transfer."  *Chauhan*, 746 F. Supp. 2d at 102 (citing *Devaughn v. Inphonic, Inc.*, 403 F. Supp. 2d 68, 72 (D.D.C. 2005); *Trout Unlimited v. U.S. Dep't of Agric.*, 944 F. Supp. 13, 16 (D.D.C. 1996)).  To evaluate this, the Court weighs six private-interest factors: "(1) the plaintiff's choice of forum, (2) the defendant's choice of forum, (3) where the claim arose, (4) the convenience of the parties, (5) the convenience of the witnesses, and (6) the ease of access to sources of proof."  *Wolfram Alpha LLC v. Cuccinelli*, 490 F. Supp. 3d 324, 331 (D.D.C. 2020) (citing *Aftab v. Gonzalez*, 597 F. Supp. 2d 76, 80 (D.D.C. 2009)).  The Court also considers three public-interest factors: "(1) the transferee court's familiarity with the applicable law; (2) the relative congestion of the calendars of the transferee and transferor courts; and (3) the local interest in deciding local controversies at home."  *Id.* at 334 (quoting *Al-Ahmed v. Chertoff*, 564 F. Supp. 2d 16, 19 (D.D.C. 2008)).  The Court examines each set of factors in sequence.

**C. Private-Interest Factors**

<u>1. Plaintiff's Choice of Forum</u>

Although courts typically defer to the plaintiff's choice of forum, *Gyau v. Sessions*, No. 18-cv-407, 2018 WL 4964502, at *2 (D.D.C. Oct. 15, 2018), this deference is "lessened when the plaintiff's choice is not the plaintiff's home forum, and is at its nadir when the 'plaintiff's forum choice lacks meaningful ties to the controversy and [has] no particular interest in the parties or subject matter.'" *Melnattur v. U.S. Citizenship & Immigr. Servs.*, No. CV 20-3013 (JDB), 2021 WL 3722732, at *4 (D.D.C. Aug. 23, 2021) (quoting *Wei Lai*, 2021 WL 2073403, at *4)).

Ms. Porfirio chose the District of Columbia as her preferred forum by filing suit here. The District of Columbia, however, is not Ms. Porfirio's place of residence. Utah is. *See* Compl. at 1. Furthermore, as elaborated below, Ms. Porfirio's petition was processed exclusively in Irving, Texas, and she has not presented a persuasive allegation that any action in the District of Columbia influenced the grievances alleged in the instant case. Defs.' Mot. at 6, Ex. 5-1 at 1. Without being Ms. Porfirio's home forum and lacking a nexus to any actions at issue in this suit, the Court's deference to Ms. Porfirio's choice of venue in the District of Columbia is "at its nadir." *Melnattur*, 2021 WL 3722732, at *4 (quoting *Wei Lai*, 2021 WL 2073404, at *4).

Ms. Porfirio nonetheless insists that her choice of forum is entitled to meaningful deference, "is not ignored simply because [she] does not reside [there]," and should not be overridden absent a convincing demonstration that the balance of factors "strongly favors" transfer. Pl.'s Br. in Opp'n to Defs. Mot. to Transfer & Dismiss at 6 ("Pl.'s Opp'n") at 6, ECF No. 6. She supports this argument by citing *Wolfram Alpha* for the first two propositions and

both *In re Scott*, 709 F.2d 717 (D.C. Cir. 1983), and *Greater Yellowstone Coal. v. Bosworth*, 180 F. Supp. 2d 124 (D.D.C. 2001), for the last point.

The Court has reviewed these cases and does not find support for any of these propositions. To the contrary, as it does here, in *Wolfram Alpha*, the Court acknowledged that a plaintiff's forum of choice is typically entitled to deference, but that this is significantly lessened when it is not their home forum and the chosen forum lacks a meaningful connection to the alleged controversy. 490 F. Supp. 3d at 332 (explaining that "deference to the plaintiff's choice of forum is lessened when the plaintiff's choice is not the plaintiff's home forum" and that the factor therefore weighs "only slightly" in the plaintiff's favor). *In re Scott*, for its part, focused on the propriety of a district court transferring a case *sua sponte* (as opposed to on a parties' motion) as well as the "express congressional design to render the District of Columbia an all-purpose forum" for cases under the Freedom of Information Act, neither of which is implicated here. 709 F.2d at 720–21 (explaining only that a court ordering transfer *sua sponte* "should be reserved for exceptional circumstances"). And, finally, Ms. Porfirio quotes *Greater Yellowstone Coalition* as stating that a transfer from Plaintiff's choice of forum requires more than a "close" call, but the Court cannot find that language in the opinion. Pl.'s Opp'n at 6 (quoting *Greater Yellowstone Coal.*, 180 F. Supp. 2d at 129). Instead, like this Court's analysis above, that opinion's evaluation of the deference afforded to the plaintiff's choice of forum was contingent upon there being a connection between the forum and the controversy or parties. *See* 180 F. Supp. 2d at 128–29.

Because Ms. Porfirio does not reside in the District of Columbia and this forum has no meaningful connection to the controversy at issue, her choice of forum is afforded minimal deference. Therefore, this factor weighs against transfer, but only slightly.

### 2. Defendant's Choice of Forum

The government's choice of forum favors transfer in the instant case. "A defendant's choice of forum is typically granted deference only when they can establish that the added convenience and justice of litigating in their chosen forum overcomes any deference to the Plaintiffs' choice of venue." *Melnattur*, 2021 WL 3722732, at *5 (cleaned up). As Ms. Porfirio's choice of forum receives minimal deference and the government moves to transfer to the forum where the claim arose or, alternatively, her home forum, *see* Defs.' Mot. at 6, the government's choice of forum is given some weight. *See Melnattur*, 2021 WL 3722732, at *5 (applying identical reasoning). This factor thereby favors transfer to the Northern District of Texas or, alternatively, to the District of Utah.

### 3. Location of Activities that Gave Rise to the Action

The location of activities that gave rise to the action in the instant case weighs heavily in favor of transfer. "When the material events that form the factual predicate of a plaintiff's claim did not occur in [their] chosen forum, transfer is favored." *Wolfram Alpha*, 490 F. Supp. 3d at 331 (quoting *Ngonga*, 318 F. Supp. 3d at 275). In APA cases, "the underlying claim typically arises 'where the decisionmaking process occurred.'" *Rabelo v. Noem*, 2025 WL 3171005, at *3 (quoting *McAfee*, 2019 WL 6051559, at *1).

Ms. Porfirio does not allege a meaningful nexus between the District of Columbia and USCIS's denial of her petition. Her Complaint neither identifies any "'acts or omissions' occurring in this District," *Gummaraju v. Mullin*, No. CV 25-3714 (SLS), 2026 WL 1718284, at *4 (D.D.C. June 15, 2026) (quoting *Aishat v. U.S. Dep't of Homeland Sec*, 288 F. Supp. 3d 261, 264 (D.D.C. 2018)), nor alleges that the named officials "had any role in adjudicating the Petition." *Gummaraju*, 2026 WL 1718284, at *4. Instead, USCIS personnel reviewed and

9

denied her petition at the Texas Service Center, and Ms. Porfirio presumably received that denial at her residence in Utah.  Defs.' Mot., Ex. 5-1 at 1; Compl. at 1.  Accordingly, the "decisionmaking process" occurred outside the District of Columbia, which favors transfer. *Rabelo*, 2025 WL 3171005, at *3 (quoting *McAfee*, 2019 WL 6051559, at *1); *Wolfram Alpha*, 490 F. Supp. 3d at 331.

This result is ordinary.  "[C]ourts in this district," including this one, "routinely conclude that lawsuits challenging the denial of an immigration-related application should be litigated in either the district where the denial occurred or the district where the applicant resides." *Gummaraju*, 2026 WL 1718284, at *4; *see also, e.g.*, *Bourdon v. DHS*, 235 F. Supp. 3d 298, 305 (D.D.C. 2017) ("Cases challenging the actions of local USCIS offices are frequently, and appropriately, transferred to the venue encompassing those local offices . . . ."); *Wolfram Alpha*, 590 F. Supp. 3d 340 (transferring case challenging visa denial to district where applicant resided).

Ms. Porfirio raises two counterarguments, but neither persuades the Court.  First, she argues that the District of Columbia "has a substantial connection to the case" because "DHS leadership is headquartered here" and USCIS "leadership is nearby."  Pl.'s Opp'n at 6.  It does not suffice, however, to merely name agency officials residing in the District of Columbia as defendants.  *See Aftab*, 597 F. Supp. 2d at 81 ("[N]aming . . . agency directors does not alone anchor venue [in the District of Columbia].").  The Secretary of Homeland Security did not deny Ms. Porfirio's request.  USCIS employees in Texas did.

Second, Ms. Porfirio appears to argue that her complaint challenges a policy or interpretation of legal standards that was made by agency leadership in the District of Columbia. *See* Pl.'s Opp'n at 5.  The problem with this argument is that her Complaint describes neither a

national policy nor a discrete form of centralized supervision.  Rather, she alleges that USCIS

mischaracterized and misinterpreted her achievements on multiple instances—facts specific to

the review of her particular application, which occurred in Texas.  Compl. ¶¶ 40–50.  And she

does not ask the Court to set aside any governmental regulations or policies but rather that the

Court order the government to either approve her EB-1A petition or to reopen and reconsider it.

*Id.* at 16 (request for relief).  Indeed, she does not "identify or challenge 'any specific USCIS

policy or directive that might have caused the [Texas] Service Center to deny [her] petition.'"

*Gummaraju*, 2026 WL 1718284, at *4 (quoting *Ike v. USCIS*, No. 20-CV-1744 (CRC), 2020 WL

7360214, at *3 (D.D.C. Dec. 15, 2020)); *see also Wolfram Alpha*, 690 F. Supp. 3d at 332

("Importantly, this case seeks review of CSC's denial of Plaintiff's individualized petition only

and does not involve either a broad challenge to USCIS or DHS policies or raise any allegation

that USCIS or DH[S] administrators in the District of Columbia played any role in adjudicating

Plaintiff's petition.").  To the extent Ms. Porfirio argues that the application by officials in Texas

of policies created in the District of Columbia supports venue in the District of Columbia, courts

have concluded that such "attenuated or insignificant involvement by an official in the District of

Columbia does not support venue here." *Aftab*, 597 F. Supp. 2d at 82.[3]

---

[3] In making this argument, Ms. Porfirio once again appears to misinterpret the cases upon which she relies in opposing transfer.  She cites *Wolfram Alpha*, and *Nat'l Wildlife Fed'n v. Harvey*, for the proposition that this Court and others in this District "look to where the operative decisionmaking and policymaking occurred—not merely where paperwork was processed," Pl.'s Opp'n at 5, when they both held that the decisionmaking occurred at the physical locus of the agency actors responsible for the adjudication.  *See* 490 F. Supp. 3d at 331–32; 437 F. Supp. 2d 42, 47 (D.D.C. 2006).  Ms. Porfirio also contends that the location of the USCIS Service Center is not the locus of the decisionmaking in the instant case because this is merely where the paperwork was processed and the center "do[es] not establish policy or interpret legal standards." Pl.'s Opp. at 5.  In doing so, Ms. Porfirio argues that, "where challenged action reflects national policy or centralized supervision, [the District of Columbia] has a meaningful connection to the dispute."  Pl.'s Opp'n at 5 (citing *Aftab*, 597 F. Supp. 2d 76; *Cameron v. Thornburg*, 983 F.2d 253, 256 (D.C. Cir. 1993)).  As discussed above, *Aftab* comes out against Ms. Porfirio's

<u>4. Convenience to the Parties, the Witnesses, and the Evidence</u>

The private interest factors related to convenience weigh slightly in favor of transfer to the Northern District of Texas because any relevant evidence will be located there. "In a case involving review of an agency action, 'the location of witnesses is not a significant factor,' but 'the location of the administrative record, however, carries some weight.'" *Melnattur*, 2021 WL 3722732, at *5 (quoting *Aftab*, 597 F. Supp. 2d at 83 (D.D.C. 2009)). As Ms. Porfirio's claims arise under the APA (and a constitutional claim that mirrors her APA claims), they will likely be decided using only the administrative record, bypassing the need for much discovery or witness testimony. *Melnattur*, 2021 WL 3722732, at *5 (citing *Akinyode v. U.S. Dep't of Homeland Sec.*, No. CV 21-110 (JDB), 2021 WL 3021440, at *4 (D.D.C. July 16, 2021)). Nonetheless, as this Court explained in *Wolfram Alpha*, "[w]hen claims arise within a geographic district, that district is more likely to be convenient for potential witnesses and more likely to house evidence." 490 F. Supp. 3d at 333 (citing *McAfee*, 2019 WL 6051559, at *2). Although the government has not explicitly stated the location of the administrative record, much of it is presumably situated at the Texas Service Center, where Ms. Porfirio's petition was processed, and where witnesses relating to the instant case are more likely to reside (other than Ms. Porfirio herself, who resides in Utah). *See id.*

---

argument. Indeed, the court there rejected venue in the District of Columbia because even though the plaintiff identified relevant "policy memoranda and reports by the defendants," he "neither point[ed] to any involvement by the DHS Secretary or [other D.C. officials] in his application nor challenge[d] a general policy or regulation." 597 F. Supp. 2 at 81. Similarly, *Cameron*, does not appear to support her argument and instead reiterates that courts must be wary of attempts to "manufacture venue" merely by naming high government officials as defendants, as Ms. Porfirio has done here. 983 F.2d at 256.

Objecting to the proposed transfer, Ms. Porfirio contends that transfer would "deprive [her] of her chosen counsel, who is not admitted in [the Northern District of Texas], and would impose substantial delay and expense to secure new counsel or admission."  Pl.'s Opp'n at 4.  Ms. Porfirio cites "*Ravenell v. Van Buren*, 2019 WL 6619363, at \*5 (D.D.C. Dec. 5, 2019)" in support of the proposition that courts in this district consider this kind of deprivation of counsel as part of their transfer assessment.  *Id*.  This Court, like the government, could not locate the case in question to verify this proposition.  Defs.' Reply in Supp. Mot. ("Defs.' Reply"), ECF No. 7, at 4 n.1.  On the contrary, this Court, alongside others, has previously concluded that "[t]he location of counsel is not a consideration" when assessing the convenience of the parties.  *Wolfram Alpha,* 490 F. Supp. 3d at 333 (citing *Chauhan*, 746 F. Supp. 2d at 104).

In sum, the private-interest factors favor transferring the case away from the District of Columbia.  The location where the activities in question arose and convenience factors strongly favor transfer to the Northern District of Texas.  The balance of the remaining private-interest factors is either neutral or slightly in favor of transfer to the District of Utah.

### D.  Public-Interest Factors

#### 1. Transferee Court's Familiarity with Applicable Law

As both parties agree that Ms. Porfirio's claim requires the interpretation of federal law, the first public-interest factor is neutral.  Defs.' Mot. at 14; Pl.'s Opp'n at 7.  In such instances, "[t]he transferee district is presumed to be equally familiar with the federal laws governing [the plaintiff's claims]."  *Wolfram Alpha*, 490 F. Supp. 3d at 335 (citing *Aftab*, 597 F. Supp. 2d at 83).  Absent either party contesting that federal claims "could be handled *competently* by a court in either district," this factor is neutral.  *Wolfram Alpha*, 490 F. Supp. 3d at 335 (quoting *Aishat*, 288 F. Supp. 3d at 271).

### 2. Relative Congestion of the Courts

The second public interest factor, the relative congestion of the calendars of the transferee and transferor courts, is also neutral.  The government argues that "there can be no dispute" that both the Northern District of Texas and the District of Columbia have congested dockets, and Ms. Porfirio does not dispute this.  Defs.' Mot. at 6.  Neither party comments on the relative congestion of the District of Utah.  This factor, therefore, appears to be neutral.  *Def. Servs., Inc. v. Mayorkas*, No. CV 21-1314 (RC), 2022 WL 910335, at *5 (D.D.C. Mar. 29, 2022) (citing *Wolfram Alpha*, 490 F. Supp. 3d at 337).

### 3. Local Interest in Deciding Local Controversies at Home

The local interest in deciding local controversies at home, arguably the most important of the public-interest factors, weighs in favor of transfer.  *Wolfram Alpha*, 490 F. Supp. 3d at 338. In assessing this factor, consider "where the challenged decision was made; whether the decision directly affected the citizens of the transferee state; the location of the controversy[;] . . . whether the controversy has some national significance; and whether there was personal involvement by a District of Columbia official."  *Melnattur*, 2021 WL 3722732 at *6 (quoting *Bourdon*, 235 F. Supp. 3d at 308).  As explained above, the decision appears to have been made in Texas with minimal, if any, involvement from any officials in the District of Columbia.  The decision does not appear to affect any citizens of the District of Columbia—only Ms. Porfirio who resides in Utah—and the adjudication of an individual visa application is generally not of national significance.

Ms. Porfirio counters that the District of Columbia "has a strong interest in the legality of actions taken by federal departments and leadership located here" and that, where the record and legal issues are the same in either forum, "defendants cannot satisfy their burden by pointing to a

14

nominally "local" service-center location." Pl.'s Opp'n at 7. Ms. Porfirio does not explain, however, why the District of Columbia has any greater interest in the federal government following the law than any of the fifty states. She cites *Hand & Hand, LLC v. U.S. Department of Health & Human Services*, 21 F. Supp. 3d 8, 18 (D.D.C. 2014), for the proposition that the "public interest includes [the] local interest in resolving controversies connected to the forum," Pl.'s Opp'n at 7, but the Court has been unable to locate this case. At any rate, even assuming the authority exists, the problem with Ms. Porfirio's argument is that she has not identified a controversy related to the District of Columbia. The controversy appears to be more related to Texas or Utah, and those fora at least have a greater interest in the controversy than the District of Columbia.

In sum, two public-interest factors are neutral, and the most important factor supports transfer to the Northern District of Texas. Like their private counterparts, the public-interest factors thereby also weigh in favor of transfer to this district.

### E. Remaining Motions

The Government recognizes that the Court, having found transfer warranted, need not reach the merits of the motion to dismiss. Defs.' Mot. at 10; *see Wei Lai Dev.*, 2021 WL 2073403, at *3 n.5 (D.D.C. May 24, 2021); *Mohammadi v. Scharfen*, 609 F. Supp. 2d 14, 16 n.2 (D.D.C. 2009) ("In light of the transfer, the court does not address the defendants' motion to dismiss."). The Court thereby denies the government's motion to dismiss without prejudice "so that [the government] may refile it, if appropriate, upon transfer." *Abusadeh v. Chertoff*, No. 06-cv-2014 (CKK), 2007 WL 2111036, at *1 (D.D.C. July 23, 2007).

## V.  POTENTIAL IMPROPER PREPARATION OF OPPOSITION BRIEF

Before closing, the Court notes that it harbors some concern about the preparation of the opposition brief.  The Government has identified at least one case cited in the opposition brief which it could not corroborate.  *See* Defs.' Reply at 4 n.1 (noting that the Government could not identify the case cited by Ms. Porfirio's counsel as *Ravenell v. Van Buren*, 2019 WL 6617363, at *5 (D.D.C. Dec. 5, 2019)).  Like the Government, the Court has searched for this authority to no avail.  Nor could the Court locate "*Hand & Hand, LLC v. U.S. Dep't of Health & Hum. Services*, 21 F. Supp. 3d 8 (D.D.C. 2014)," another authority cited in the opposition brief.  Pl.'s Opp'n at 7.  Similarly, the Court has been unable to find at least some of the quotes used in the opposition brief.  *See supra* at 8 (discussing missing quotation).  Finally, the brief appears to severely mischaracterize case holdings and dispositions, some of which are described above.  *Compare, e.g.*, Pl.'s Opp'n at 3 (characterizing this Court's decision in *Wolfram* as "denying transfer"), *with Wolfram*, 490 F. Supp. 3d at 340 (transferring case to Illinois).

It is not acceptable to submit filings to the Court containing false, misleading, or nonexistent quotations or authorities.  Such conduct contravenes an attorney's duty toward their client to exercise professional judgment and responsibility.  *See Park v. Kim,* 91 F.4th 610, 614 (2d Cir. 2024).  In particular, Rule 11(b)(2) of the Federal Rules of Civil Procedure provides that "[b]y presenting to the court a pleading, written motion, or other paper," an attorney "certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the claims, defenses, and other legal contentions are warranted by existing law . . . ." Fed. R. Civ. P. 11(b)(2).  Furthermore, Rule 3.3(a)(1) of the District of Columbia Rules of Professional Conduct provides that an attorney "shall not knowingly . . . [m]ake a false statement of fact or law to a tribunal."  D.C. R. Pro.

Conduct 3.3(a)(1).  The Court agrees with the Second Circuit that, at minimum, such rules "require that attorneys read, and thereby confirm the existence and validity of, the legal authorities on which they rely."  *Park*, 91 F.4th at 615.

Courts have taken diverse disciplinary actions against attorneys who have filed pleadings and other court papers citing nonexistent legal authorities and quotations, ranging from striking the pleadings, *see, e.g.*, *Grant v. City of Long Beach*, 96 F.4th 1255, 1256–57 (9th Cir. 2024); to ordering counsel to show cause why sanctions should not issue, *see, e.g.*, *Mata v. Avianca, Inc.*, No. 22-cv-1461, 2023 WL 3696209, at *1 (S.D.N.Y. May 4, 2023); and referring counsel to a court's grievance panel, *see, e.g.*, *Park*, 91 F.4th at 612.

At this juncture, however, it would be premature for the Court to find that anything improper was done in the preparation of the opposition brief, and the Court makes no such finding at this time.  After all, counsel for Ms. Porfirio has had no opportunity to address the Court's concerns.  And the Court will not open an inquiry into the brief's preparation at this time because, as explained above, it is transferring this case to another district and will leave to the sound judgment of the transferee court how to handle the matter.  But the Court notes that the brief's citation to nonexistent quotations and cases as well as its misstatements of law bear the hallmarks of reliance on an artificial intelligence tool.  *See Williams v. Cap. One Bank, N.A.*, No. 15 24-cv-2032, 2025 WL 843285, at *7 (D.D.C. Mar 18, 2025) ("Courts have recently seen increasing reliance on artificial intelligence in legal proceedings, leading to the use of nonexistent citations in court documents.").  And if this case somehow returns to this Court, the Court may inquire further into the preparation of the opposition brief.

## VI.  CONCLUSION

For the foregoing reasons, the Court grants the government's motion to transfer and denies their motion to dismiss without prejudice.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  July 23, 2026                                           RUDOLPH CONTRERAS
                                                                        United States District Judge